LAKE LAND EMPLOYMENT GROUP OF AKRON, LLC,
APPELLANT, *v.* COLUMBER, APPELLEE, ET AL.

[Cite as *Lake Land Emp. Group of Akron, LLC v. Columber*, 101 Ohio St.3d 242, 2004-Ohio-786.]

(No. 2002–2069—Submitted September 24, 2003—Decided March 10, 2004.)

Moyer, C.J.

{¶ 1} Lake Land Employment Group of Akron, LLC ("Lake Land"), appellant, initiated this action by filing a complaint asserting that its ex-employee, appellee Lee Columber, had breached a noncompetition agreement the parties had executed. The agreement provided that for a period of three years after his termination of employment Columber would not engage in any business within a 50–mile radius of Akron, Ohio, that competed with the business of Lake Land. Lake Land further claimed that Columber's employment with Lake Land terminated in 2001 and that he thereafter violated the terms of the noncompetition agreement. Lake Land sought money damages and an order prohibiting Columber from engaging in any activities that violated the noncompetition agreement.

{¶ 2} Columber answered and admitted that he had been employed by Lake Land from 1988 until 2001. He further admitted that he had signed the noncompetition agreement and that following his discharge from Lake Land he had formed a corporation that is engaged in a business similar to that of Lake Land. Columber pled lack of consideration in his answer.

{¶ 3} Columber moved for summary judgment, claiming that the noncompetition agreement was unenforceable. He asserted that the agreement was not supported by consideration and that the restrictions in the agreement were overly restrictive and imposed an undue hardship on him.

{¶ 4} Columber could remember very little about the presentation or execution of the noncompetition agreement. He could not remember whether he had been told that his continued employment was dependent upon execution of the agreement or whether he had posed questions about the restrictions it contained. He testified that he vaguely remembered signing the agreement after his employer presented it to him and told him to read and sign it. He acknowledged that he

had read the agreement, but had not talked to an attorney or anybody else about it. The at-will relationship of the parties continued for ten years thereafter.

{¶ 5} The trial court granted summary judgment in Columber's favor. It found no dispute that Columber had been employed by Lake Land beginning in 1988 and that Columber signed the agreement in September 1991. It further found no dispute that there "was no increase of salary, benefits, or other remunerations given as consideration for Columber signing the non-competition agreement" and "no change in his employment status in connection with the signing of the noncompetition agreement." The trial court concluded that the noncompetition agreement lacked consideration, and was unenforceable. The trial court therefore found it unnecessary to determine the reasonableness of the temporal and geographical restrictions in the noncompetition agreement.

{¶ 6} The court of appeals affirmed. It certified a conflict, however, between its decision and the judgments of the Eighth District Court of Appeals in *Swagelok Co. v. Young,* 8th Dist. No. 78976, 2002-Ohio-3416, 2002 WL 1454058, and the Twelfth District Court of Appeals in *Willis Refrigeration, Air Conditioning & Heating, Inc. v. Maynard* (Jan. 18, 2000), 12th Dist. No. CA99–05–047, 2000 WL 36102. The certified issue is "Is subsequent employment alone sufficient consideration to support a covenant-not-to-compete agreement with an at-will employee entered into after employment has already begun?"

I

Legal Background

{¶ 7} Generally, courts look upon noncompetition agreements with some skepticism and have cautiously considered and carefully scrutinized them. Ingram, Covenants Not to Compete (2002), 36 Akron L.Rev. 49, 50. Under English common law, agreements in restraint of trade, including noncompetition agreements, were disfavored as being against public policy, although partial restraints supported by fair consideration were upheld. *Lange v. Werk* (1853), 2 Ohio St. 519, 527–528, 1853 WL 117, citing *Mitchel v. Reynolds* (1711), 1 P. Wms. 181, 24 Eng.Rep. 347. In a society in which working men entered skilled trades only by serving apprenticeships, and mobility was minimal, restrictive covenants precluding an ex-employee from competing with his ex-employer "either destroyed a man's means of livelihood, or bound him to his master for life." *Raimonde v. Van Vlerah* (1975), 42 Ohio St.2d 21, 71 O.O.2d 12, 325 N.E.2d 544.

{¶ 8} Modern economic realities, however, do not justify a strict prohibition of noncompetition agreements between employer and employee in an at-will relationship. "The law upholds these agreements because they allow the parties to work together to expand output and competition. If one party can trust the other with confidential information and secrets, then both parties are better

positioned to compete with the rest of the world.   * * * By protecting ancillary covenants not to compete, even after an employee has launched his own firm, the law 'makes it easier for people to cooperate productively in the first place.' "   *KW Plastics v. United States Can Co.* (Feb. 2, 2001), M.D. Ala. Nos. Civ. A. 99–D–286–N and 99–D–878–N, 2001 WL 135722, quoting *Polk Bros., Inc. v. Forest City Ent., Inc.* (C.A.7, 1985), 776 F.2d 185, 189.

{¶ 9} Accordingly, this court has long recognized the validity of agreements that restrict competition by an ex-employee if they contain reasonable geographical and temporal restrictions.   *Briggs v. Butler* (1942), 140 Ohio St. 499, 507, 24 O.O. 523, 45 N.E.2d 757.   Such an agreement does not violate public policy, "being reasonably necessary for the protection of the employer's business, and not unreasonably restrictive upon the rights of the employee."   Id. at 508, 24 O.O. 523, 45 N.E.2d 757.

{¶ 10} In *Rogers v. Runfola & Assoc., Inc.* (1991), 57 Ohio St.3d 5, 565 N.E.2d 540, this court found valid a noncompetition clause in a written contract for a one-year term of employment that was subject to automatic renewal, in which the employer agreed to discharge the employee only for specified reasons.   We rejected the argument of the ex-employee that her promise not to compete lacked consideration in light of the "the exchange of mutually beneficial promises," id. at 7, 565 N.E.2d 540, even though the agreement was signed well after the employment relationship had begun.   The case at bar, however, is distinguishable, as it involves an at-will employee who had no express contractual expectation of, or legal entitlement to, continued employment.

{¶ 11} Jurisdictions throughout the country are split on the issue presented by the certified question.   See, generally, Annotation, Sufficiency of Consideration for Employee's Covenant Not to Compete, Entered into after Inception of Employment (1973), 51 A.L.R.3d 825.   As summarized by the Supreme Court of Minnesota, "cases which have held that continued employment is not a sufficient consideration stress the fact that an employee frequently has no bargaining power once he is employed and can easily be coerced.   By signing a noncompetition agreement, the employee gets no more from his employer than he already has,[1] and in such cases there is a danger that an employer does not need protection for his investment in the employee but instead seeks to impose barriers to prevent an employee from securing a better job elsewhere.   Decisions in which continued employment has been deemed a sufficient consideration for a noncompetition agreement have focused on a variety of factors, including the

---

1.   Note, however, that an at-will employee does not already have a right to come to work in the future at all, let alone under past terms of employment.   Although both parties may very well contemplate continuation of the relationship, either may terminate it at any time.   See discussion below at ¶ 17.

possibility that the employee would otherwise have been discharged, the employee was actually employed for a substantial time after executing the contract, or the employee received additional compensation or training or was given confidential information after he signed the agreement." (Citations omitted.) *Davies & Davies Agency, Inc. v. Davies* (Minn.1980), 298 N.W.2d 127, 130.

{¶ 12} More recently, some courts have found sufficient consideration in an at-will employment situation where a *substantial* period of employment ensues after a noncompetition covenant is executed, especially when the continued employment is accompanied by raises, promotion, or similar tangible benefits. 6 Lord, Williston on Contracts (4th Ed.1995), Section 13:13. These courts thereby implicitly find that the execution of a noncompetition agreement changes the prior employment relationship from one purely at will. Id. at 577–584. In effect, these courts infer a promise on the part of the employer to continue the employment of his previously at-will employee for an indefinite yet substantial term. Under this approach, however, neither party knows whether the agreement is enforceable until events occur after its execution.

{¶ 13} This diversity of approach to the issue is reflected in opinions of the courts of appeals of this state. In addition to the cases cited by the court of appeals as being in conflict with its judgment, see, also, *Copeco, Inc. v. Caley* (1992), 91 Ohio App.3d 474, 632 N.E.2d 1299; *Canter v. Tucker* (1996), 110 Ohio App.3d 421, 674 N.E.2d 727; *Prinz Office Equip. Co. v. Pesko* (Jan. 31, 1990), Summit App. No. 14155, 1990 WL 7996; and *Swagelok,* 2002-Ohio-3416, ¶ 22 (recognizing that the majority of Ohio districts ruling on the issue have found that continued employment does constitute sufficient consideration to enforce a noncompetition agreement entered into after the commencement of the employment relationship).

## II

### Formation of Binding Contract

{¶ 14} The elements of a contract include the following: an offer, an acceptance, contractual capacity, consideration (the bargained-for legal benefit or detriment), a manifestation of mutual assent, and legality of object and of consideration. *Kostelnik v. Helper,* 96 Ohio St.3d 1, 2002-Ohio-2985, 770 N.E.2d 58, ¶ 16.

{¶ 15} The certified question puts in issue only the element of consideration. It asks, "Is subsequent employment alone sufficient consideration to support a covenant-not-to-compete agreement with an at-will employee entered into after employment has already begun?" We conclude that forbearance on the part of an at-will employer from discharging an at-will employee serves as consideration to support a noncompetition agreement.

{¶ 16} This court has long recognized the rule that a contract is not binding unless supported by consideration. *Judy v. Louderman* (1891), 48 Ohio St. 562, 29 N.E. 181, paragraph two of the syllabus. Consideration may consist of either a detriment to the promisee or a benefit to the promisor. *Irwin v. Lombard Univ.* (1897), 56 Ohio St. 9, 19, 46 N.E. 63. A benefit may consist of some right, interest, or profit accruing to the promisor, while a detriment may consist of some forbearance, loss, or responsibility given, suffered, or undertaken by the promisee. Id. at 20, 46 N.E. 63. See, also, *Brads v. First Baptist Church* (1993), 89 Ohio App.3d 328, 336, 624 N.E.2d 737; *Nilavar v. Osborn* (1998), 127 Ohio App.3d 1, 15, 711 N.E.2d 726; *Mooney v. Green* (1982), 4 Ohio App.3d 175, 177, 4 OBR 276, 446 N.E.2d 1135.

{¶ 17} At-will employment is contractual in nature. *Floyd v. DuBois Soap Co.* (1942), 139 Ohio St. 520, 530–531, 23 O.O. 20, 41 N.E.2d 393. In such a relationship, the employee agrees to perform work under the direction and control of the employer, and the employer agrees to pay the employee at an agreed rate. Moreover, either an employer or an employee in a pure at-will employment relationship may legally terminate the employment relationship at any time and for any reason. *Mers v. Dispatch Printing Co.* (1985), 19 Ohio St.3d 100, 103, 19 OBR 261, 483 N.E.2d 150. In the event that an at-will employee quits or is fired, he or she provides no further services for the employer and is generally entitled only to wages and benefits already earned.

{¶ 18} It follows that either an employer or an employee in an at-will relationship may propose to change the terms of their employment relationship at any time. If, for instance, an employer notifies an employee that the employee's compensation will be reduced, the employee's remedy, if dissatisfied, is to quit. Similarly, if the employee proposes to the employer that he deserves a raise and will no longer work at his current rate, the employer may either negotiate an increase or accept the loss of his employee. In either event the employee is entitled to be paid only for services already rendered pursuant to terms to which they both have agreed. Thus, mutual promises to employ and to be employed on an ongoing at-will basis, according to agreed terms, are supported by consideration: the promise of one serves as consideration for the promise of the other.

{¶ 19} The presentation of a noncompetition agreement by an employer to an at-will employee is, in effect, a proposal to renegotiate the terms of the parties' at-will employment. Where an employer makes such a proposal by presenting his employee with a noncompetition agreement and the employee assents to it, thereby accepting continued employment on new terms, consideration supporting the noncompetition agreement exists. The employee's assent to the agreement is given in exchange for forbearance on the part of the employer from terminating the employee.

{¶ 20} We therefore hold that consideration exists to support a noncompetition agreement when, in exchange for the assent of an at-will employee to a proffered noncompetition agreement, the employer continues an at-will employment relationship that could legally be terminated without cause.

## III

## Caveat

{¶ 21} We concur in the view that in cases involving noncompetition agreements, "as in other cases, it is still believed to be good policy to let people make their own bargains and their own valuations." 15 Corbin on Contracts (Interim Ed.2002) 96–97, Section 1395. Professor Corbin suggests that courts should inquire into the sufficiency of consideration in cases involving noncompetition agreements by examining the extent and character of the consideration received by the promisor-employee, "even though we do not do so in ordinary contract cases." Id. at 94–95.

{¶ 22} Our decision today does no more than recognize that consideration exists where an at-will employer and an at-will employee continue their employment relationship, rather than terminate it, after the employer imposes a new requirement for employment, i.e., execution of a noncompetition agreement by the employee. While we are not prepared to abandon our long-established precedent that courts may not inquire into the adequacy of consideration, we do not disagree with Corbin's conclusion that the validity of a restraining contract such as a noncompetition agreement should be "determined by weighing as best we can the sum-total of all factors standing together." Id. at 97. We simply recognize that weighing of these factors should not be performed in the context of an inquiry concerning the sufficiency of consideration. That balancing instead should occur in the context of our established precedent recognizing that only reasonable noncompetition agreements are enforceable. We reaffirm the law set forth in paragraphs one and two of the syllabus to *Raimonde,* as follows:

{¶ 23} "1. A covenant not to compete which imposes unreasonable restrictions upon an employee will be enforced to the extent necessary to protect an employer's legitimate interests. * * *

{¶ 24} "2. A covenant restraining an employee from competing with his former employer upon termination of employment is reasonable if the restraint is no greater than is required for the protection of the employer, does not impose undue hardship on the employee, and is not injurious to the public." 42 Ohio St.2d 21, 71 O.O.2d 12, 325 N.E.2d 544.

{¶ 25} Our refusal to sanction judicial inquiry into the adequacy of consideration in cases similar to the one at bar does not exclude consideration of other requisites of a contract. It remains the law that noncompetition agreements, like

other purported contractual arrangements, may be voidable or unenforceable for reasons other than lack of consideration.

## IV

### Disposition

{¶ 26} Both Columber and his employer had a legal right to terminate their at-will employment relationship when Columber was presented with the noncompetition agreement in 1991. Neither party exercised that legal right to terminate the employment relationship, and, in fact, Columber continued working for the appellant for an additional ten years. Accordingly, the noncompetition agreement is not void for lack of consideration, and summary judgment in Columber's favor should not have been entered on that basis.

{¶ 27} Although the trial court erred in entering summary judgment based on its determination that the noncompetition agreement lacked consideration, it must yet determine whether the noncompetition agreement is reasonable pursuant to controlling precedent. We therefore reverse the judgment of the court of appeals and remand the cause for further proceedings.

Judgment reversed
and cause remanded.

LUNDBERG STRATTON, O'CONNOR and HANDWORK, JJ., concur.

RESNICK, J., dissents.

F.E. SWEENEY, J., dissents.

PFEIFER, J., dissents.

PETER M. HANDWORK, J., of the Sixth Appellate District, sitting for O'DONNELL, J.

---

**ALICE ROBIE RESNICK, J., dissenting.**

{¶ 28} Courts everywhere are sharply divided on the present certified issue. However, I adhere to the principle that continued employment in an at-will situation does not by itself constitute consideration. I respectfully dissent.

{¶ 29} As the majority confirms, "a contract is not binding unless supported by consideration," which is generally defined as "a detriment to the promisee or a benefit to the promisor." Thus, in order for the September 1991 noncompetition agreement executed between appellant, Lake Land Employment Group of Akron, LLC, and appellee, Lee Columber, to be binding, either Lake Land must have given something for it or Columber must have received something in return.

Yet, when all is said and done, the only difference in the parties' employment relationship before and after September 1991 is the noncompetition agreement.

{¶ 30} The majority's holding that "[c]onsideration exists to support a noncompetition agreement when * * * the employer continues an at-will employment relationship * * *" belies itself. If the same at-will employment relationship continues, where is the consideration? The employer has relinquished nothing, since it retains exactly the same preexisting right it always had to discharge the employee at any time, for any reason, for no reason, with or without cause. The employee has gained nothing, for he has not been given or promised anything other than that which he already had, which is "employment which need not last longer than the ink is dry upon [his] signature." *Kadis v. Britt* (1944), 224 N.C. 154, 163, 29 S.E.2d 543. It is precisely because the same at-will employment relationship continues that there is no consideration.

{¶ 31} In fact, the majority endeavors to transform this mutual exchange of nothing into consideration by formulating such artful euphemisms as "forbearance on the part of an at-will employer from discharging an at-will employee," "mutual promises to employ and to be employed on an ongoing at-will basis," and "a proposal to renegotiate the terms of the parties' at-will employment." But in the end, the employer simply winds up with both the noncompetition agreement and the continued right to discharge the employee at will, while the employee is left with the same preexisting "nonright" to be employed for so long as the employer decides not to fire him. The only actual "forbearance," "proposal," or "promise" made by the employer in this situation is declining to fire the employee until he executes the noncompetition agreement.

{¶ 32} Moreover, the majority's holding and supporting rationale would allow the enforcement of a noncompetition agreement that was exacted from an employee who, at the time of execution, had already acquired all the knowledge his or her position affords and who was fired the day after affixing his or her signature to the document. In cryptic fashion, the majority is essentially holding that a restrictive covenant may henceforth be exacted from an at-will employee without any supporting consideration.

{¶ 33} Thus, as well summarized in one analysis:

{¶ 34} " 'A contract by an employee not to divulge information obtained in the employment and not to engage in other employment in a similar business for two years after the cessation of his employment is not supported by a sufficient consideration where it [is] not executed until after he has been in the employment for several years, his position and duties and the nature of the business remain exactly the same as before, and the employer, reserving the right to discharge him at any time, does not assume any obligation which he does not already have.' " *Morgan Lumber Sales Co. v. Toth* (1974), 41 Ohio Misc. 17, 19, 70 O.O.2d

33, 321 N.E.2d 907, quoting Headnote 1 to *Kadis v. Britt,* supra, as reported in 152 A.L.R. 405.

{¶ 35} Since the noncompetition agreement in this case lacked consideration and therefore was unenforceable, I would affirm the judgment of the court of appeals.

---

PFEIFER, J., dissenting.

{¶ 36} I concur with Justice Resnick's dissent—an employer's agreement not to terminate an employee if the employee signs a noncompetition agreement does not constitute consideration. It constitutes coercion.

{¶ 37} But the majority has found otherwise. In doing so, the majority must acknowledge that the execution of a noncompetition agreement for which forbearance from discharge is the consideration alters the at-will nature of the employment relationship. Any promise of continued employment removes the employment from the realm of an at-will relationship. For some undefined time, the employer must continue to employ the signer of the agreement. How long a period is enough? The absence of a specified term for the forbearance from discharge will leave courts to determine what is reasonable.

{¶ 38} Employers could prevent noncompetition agreements from intruding into the at-will relationship by not tying consideration to continued employment. A separate, monetary consideration could ensure that the noncompetition agreement stays a separate arrangement.

---

Waldheger–Coyne Co., L.P.A., Walter F. Ehrnfelt, Mary J. Giganti and Luke F. McConville, for appellant.

Riek & Associates Co., L.P.A., and F. Benjamin Riek III; and Susan Lax, for appellee.